FILED
IN CLERKS OFFICE
2026 OCT -1 P 12:32
U.S. DISTRICT COURT
DISTRICT OF MASS.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

THERESA M. COELHO, individually and d/b/a Coelho Zippers and

Pulls and Domino Trendz,

Plaintiff,

v.

JOHN/JANE DOE(S), identities unknown,

Defendant(s).

Civil Action No.

---

**COMPLAINT AND DEMAND**

FOR JURY TRIAL

NOTICE ON FIRST PAGE: Related request for limited pre-service identification discovery

under Fed. R. Civ.

P. 26(d)(1).

## I. NATURE OF THE ACTION

1. This civil action seeks to identify and obtain relief against the presently unknown person or

persons

responsible for unauthorized access to and interference with Plaintiff Theresa M. Coelho's digital identity,

electronic communications, business-control accounts, telecommunications services, cloud services, and

related protected computers and systems.

2. The action arises under the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 and 2707, and the

Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Plaintiff seeks narrowly tailored early discovery

because records capable of identifying or narrowing the responsible actor or actors are held by third-party

providers and are not available through ordinary customer access.

3. Plaintiff does not ask the Court to accept suspicion as identity. She seeks lawful process to convert provider-held records into evidence so that the proper defendant or defendants can be named and served.

## II. PARTIES, JURISDICTION, AND VENUE

4. Plaintiff Theresa M. Coelho resides in Framingham, Massachusetts. At the beginning of the events

described below she resided and operated her businesses in Brockton, Massachusetts.

5. Plaintiff operated Coelho Zippers and Pulls and Domino Trendz as sole proprietorships under one EIN. She brings claims for her own injuries, including injuries to those sole-proprietor operations, and not on behalf of a separate corporation.

6. The original Facebook account known as "Theresa S. Coelho" functioned as a controlling Facebook identity through which Plaintiff administered substantial portions of the online presence of her businesses, including pages, groups, customer communications, Instagram accounts, Threads activity, advertising, and related Meta assets. The businesses made interstate sales.

7. Defendants are the presently unidentified individual or individuals responsible for the unauthorized conduct alleged below and are designated John/Jane Doe(s). Their legal names, residences, and service addresses are unknown.

8. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising

under 18 U.S.C. §§ 1030, 2701, and 2707.

9. Venue is alleged under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and resulting injuries occurred in Massachusetts, where Plaintiff used the affected accounts and systems and experienced loss of access and control, business interruption, remediation and restoration costs, and other injuries. The locations of some access events and Defendants' contacts with Massachusetts remain subjects of discovery.

**III. ORIGINAL META ACCOUNT AND OCTOBER 2024 CONTROL EVENTS**

10. At approximately 12:39:26 p.m. Eastern Time on October 2, 2024, Plaintiff first became aware of the incident when she received two-factor-authentication prompts on the original Theresa S. Coelho Facebook account that she had not initiated. She denied both prompts.

11. Preserved account records identify dvdmeta@hotmail.com as added to the affected account on October 2, 2024; metafb2fa@hotmail.com as added on October 3, 2024; and telephone number +2347073054681 as added on October 4, 2024.

12. Plaintiff did not authorize those additions or authorize an unknown person to take control of the account.

13. Plaintiff thereafter lost meaningful control of the account and undertook repeated recovery and access-control restoration efforts.

14. Preserved provider/export evidence also includes an October 2 event associated with IP address 198.7.56.172, later device/client anomalies including Linux, Android 10, Macintosh activity, and an October 6, 2024 event for which Meta's record identifies the client as "C++/THttpClient" and the activity as a completed checkpoint through a programmatic HTTP client. Plaintiff reserves the precise meaning of provider fields for provider interpretation and discovery.

15. Meta's preserved account records further identify repeated "Successful profile recovery" events for which the recovery method is recorded as "Mobile provider: AT&T Mobility," including events on October 14, October 16, and October 17, 2024. The first identified October 14 recovery at 22:12:23 is followed one second later by a recorded password change at 22:12:24. The recovery record also contains mobile country code 310 and provider-side update metadata.

16. Plaintiff's first and only AT&T service began on September 6, 2025. She therefore cannot determine from the consumer-facing Meta export what recovery object, telephone or subscriber identifier, device relationship, carrier determination, or historical account association caused Meta to record AT&T Mobility as the recovery method in October 2024. Those underlying records are material identification evidence held by Meta and, to the extent a responsive carrier identifier is returned, AT&T.

## IV. REPLACEMENT META IDENTITY AND CONTINUING RECOVERY CYCLE

17. In the weeks following the original compromise, Plaintiff created a second Facebook identity, "Theresa

Marie Coelho," to rescue, preserve, and regain control of pages, groups, Instagram accounts, Threads presence,

and related business and social-media assets affected by the original account-control problems.

18. The Theresa Marie Coelho account was a remediation measure, not an unrelated second account.

19. Plaintiff preserved records of continuing access, recognition, session, device, and account-control

irregularities affecting the replacement identity and connected services.

20. Recovery was not a single completed event. Plaintiff experienced a recurring cycle of challenged event,

recovery or remediation, restored or partial control, loss or failure of that restored control, and further recovery

or remediation. Provider-side records are needed to determine which cycles share technical identifiers and

which do not.

**V. STORED COMMUNICATIONS FACTS**

21. Before the account-control events, Plaintiff had an established Messenger history retrievable through Meta's service. That history included communications used in connection

with Plaintiff's sole-proprietor businesses, Domino Trendz and Coelho Zippers and Pulls, as well as personal communications.

22. During the unauthorized account-control events, Plaintiff lost access to the account and its Messenger communications. When Facebook access later returned, the prior Messenger history that Plaintiff had previously been able to retrieve was no longer available or retrievable by her.

23. Plaintiff does not presently know whether the affected communications were deleted, moved, altered, hidden, reassociated with another account or identity, or rendered inaccessible through changed account or access controls. Those provider-side facts are within Meta's records.

24. Plaintiff alleges the observable sequence within her knowledge and preserved records: the communications existed and were retrievable before the challenged account-control events; unauthorized account-control activity occurred; Plaintiff lost account and communications access; and, when account access later returned, the prior Messenger history was no longer retrievable. Section 2701(a) expressly reaches unauthorized access that thereby obtains, alters, or prevents authorized access to an electronic communication while it is in electronic storage. Plaintiff seeks Meta records to determine the precise mechanism and storage state at the challenged access time.

## VI. MULTI-PROVIDER ACCESS AND CONTROL EVENTS

25. Plaintiff has preserved security, recovery, access-control, business-administration, carrier, and endpoint records across multiple services in addition to Meta. Those records are relevant only where they bear on a pleaded access event, identification path, loss, or later provider-

specific discovery showing; Plaintiff does not allege that every service experienced the same violation or shared the same actor.

26. The evidence includes account-security and recovery records, Google Drive ownership/folder activity, Wix account-security and payment-account records, Microsoft/Hotmail recovery relevance, Proton security events, carrier and telecommunications records, Xfinity administrative/call-log evidence, and preserved network/device artifacts.

27. Plaintiff does not allege that every event affecting every provider was caused by the same person. Whether events share a common actor, coordinated actors, separate actors, or non-common causes is an attribution question that customer-facing records cannot resolve.

28. Providers can possess source IP addresses, timestamps, user-agent/device information, session or event identifiers, recovery-email and telephone changes, authentication-factor changes, administrator or role changes, subscriber information, carrier assignments, payment-audit data, and other non-content security

metadata capable of technical comparison.

## VII. INTERSTATE BUSINESS, INTERRUPTION, AND CFAA LOSS

29. Because Plaintiff operated the businesses as sole proprietorships, injury to the controlling accounts and business systems was injury to Plaintiff herself.

30. Plaintiff used the affected online ecosystem to conduct interstate commerce, including customer communications and sales.

31. Beginning with the October 2024 loss of access and control, the prolonged compromise and recurring recovery failures affected business pages, domains, cloud storage, payment infrastructure, business email, customer-facing services, digital property, devices, network infrastructure, and related operations.

32. Ordinary online business operations ceased because Plaintiff no longer had reliable access to and control over the digital infrastructure through which the businesses operated and could not responsibly continue handling customer information and transactions in that condition. Plaintiff did not abandon Coelho Zippers

and Pulls or Domino Trendz. She intends to rebuild and resume operations when reliable control and stability

are restored.

33. Plaintiff incurred substantial economic loss in responding to the challenged access, determining its scope,

repeatedly recovering and restoring accounts and access controls, restoring or reconstructing systems and

business infrastructure, remediating authentication and security conditions, evaluating devices and networks,

and escalating recovery/security issues with providers and specialized resources.

34. For the statutory-loss allegation, Plaintiff relies on a one-year period within February 2025 through February 2026. Contemporaneous April 2026 insurance material records more than 1,000 total incident-related hours and a deliberately reduced approximately 400-450-hour directly attributable/documentable subset. That contemporaneous subset included multi-platform recovery, evidence preservation, business reconstruction, network segmentation, device evaluation, ongoing incident response, and claims preparation/documentation. Plaintiff does not treat every hour in that mixed subset as CFAA loss.

35. Plaintiff alleges that, during the selected one-year period, the aggregate reasonable economic cost of qualifying incident response, damage/scope assessment, access and control restoration, system and business-infrastructure restoration/reconstruction, and necessary security remediation exceeded $5,000. Existing records also document remediation expenditures,

including security software and electronics/equipment purchases, while exact item-purpose allocation remains subject to proof.

36. The $5,000 allegation does not depend on hypothetical lost revenue, emotional distress, or a claim that every incident-related hour is compensable. Plaintiff will prove the qualifying statutory subtotal through the contemporaneous time record, transaction records, device/network records, and other evidence showing the purpose and economic cost of response, assessment, restoration, and remediation work.

37. Plaintiff excludes legal research, preparation of this action, attorney searches, public-records litigation or advocacy, emotional distress, ordinary living expenses, and unrelated purchases from the CFAA statutory-loss subtotal.

## VIII. PRIOR IDENTIFICATION EFFORTS AND NO ADEQUATE ALTERNATIVE MEANS

38. Beginning in October 2024, Plaintiff used ordinary account-recovery and provider-support channels,

reported the matter to law enforcement, preserved records and devices, supplied updates, physically appeared

with evidence and devices, sought forensic assistance, pursued specialized cybersecurity resources,

administrative/regulatory channels, public-records processes, counsel, and prior judicial process.

39. Plaintiff reported the original incident to Brockton Police on October 18, 2024. By November 2024, she

understood that she could not responsibly identify the actor from the evidence available to her and refused to

convert theory into accusation without provider or forensic proof.

40. In 2025, Plaintiff attempted a Massachusetts G.L. c. 258E proceeding against an unidentified Doe

respondent. The requested order did not issue because the respondent could not be responsibly identified from

the evidence then available. Plaintiff's recollection of comments by the presiding judge is not offered as a

certified transcript unless and until the official recording is obtained.

41. On June 11, 2026, Plaintiff and her husband personally appeared at the FBI Boston/Chelsea office to report

the ongoing matter and related concerns.

42. Plaintiff cannot herself compel provider-side subscriber, authentication, session, IP, recovery, administrative, provisioning, and audit records. In May 2026, AT&T Office of the President advised Plaintiff in writing that detailed account records including SIM/eSIM activity and provisioning history beyond standard customer-accessible data require valid legal demand and directed legal process to AT&T's Global Legal Demand Center.

43. The continuing inability to obtain provider-held attribution records is the reason the Defendant remains

unidentified. Responsive records may confirm, refute, narrow, connect, or separate the events Plaintiff

documented; Plaintiff seeks to follow those records wherever they lead.

## IX. LIMITATIONS AND EVENT-SPECIFIC ACCRUAL

44. Plaintiff pleads the October 2, 2024 event as her first-awareness anchor for the original Meta account, not as a universal accrual date for every later act, account, provider, or statutory violation. Under 18 U.S.C. § 1030(g), timeliness is measured from the act complained of or discovery of damage; under 18 U.S.C. § 2707(f), timeliness is measured from when the claimant first discovered or had a reasonable opportunity to discover the particular SCA violation. Plaintiff preserves later event- and account-specific accrual dates reflected in the pleaded chronology and provider records.

## X. COUNT I - COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

45. Plaintiff incorporates the preceding paragraphs.

46. On information and belief, one or more Doe Defendants intentionally accessed protected computers without authorization and thereby obtained information within the meaning of 18 U.S.C. § 1030(a)(2)(C). The factual basis includes the unauthorized account-control and recovery events pleaded above, including additions of recovery credentials Plaintiff did not authorize, password/control changes, and successful recovery events reflected in provider records. Plaintiff's theory is lack of authorization to cross the relevant access gate; it does not depend merely on an improper purpose for otherwise authorized access.

47. In the alternative, to the extent provider evidence establishes that a Doe Defendant intentionally accessed a protected computer without authorization and, as a result, caused impairment to the integrity or availability of Plaintiff's data, information, account access, or related systems together with qualifying loss, Plaintiff pleads 18 U.S.C. § 1030(a)(5)(C). Plaintiff does not ask the Court to infer statutory damage from downstream misuse alone; the alternative theory is tied to the pleaded loss of availability and provider-side evidence of the access event and resulting impairment.

48. The affected computers and systems were used in or affected interstate or foreign commerce or

communication and therefore fall within the CFAA definition of protected computer.

49. Plaintiff suffered qualifying "loss" by reason of the unauthorized access, including reasonable costs of

responding to the offense, conducting damage/scope assessment, restoring access and control, restoring or

reconstructing affected systems/information, and necessary remedial security work.

50. During a one-year period within February 2025 through February 2026, Plaintiff alleges qualifying loss exceeding $5,000 in the aggregate from response, assessment, restoration, reconstruction, and necessary remediation costs. The threshold allegation excludes emotional distress, litigation work, and speculative future loss and will be supported by the contemporaneous time, transaction, and remediation records described above.

51. Plaintiff seeks civil relief under 18 U.S.C. § 1030(g) to the extent authorized by the factor proved under §

1030(c)(4)(A)(i)(I) and applicable limitations on damages.

XI. COUNT II - STORED COMMUNICATIONS ACT, 18 U.S.C. §§ 2701 AND 2707

52. Plaintiff incorporates the preceding paragraphs.

53. On information and belief, one or more Doe Defendants intentionally accessed without authorization a

facility through which an electronic communication service was provided.

54. On information and belief, through such unauthorized access the responsible Defendant or Defendants obtained, altered, or prevented Plaintiff's authorized access to one or more electronic communications while those communications were in electronic storage within the meaning of 18 U.S.C. § 2510(17). The pleaded Messenger sequence supplies a factual basis for that inference: Plaintiff had retrievable communications, including business-related communications; unauthorized account-control activity occurred; Plaintiff lost access; and the prior Messenger history was no longer retrievable when account access returned. Meta's provider-side records can identify the precise access event, storage state, disposition, and mechanism.

55. The Meta Messenger facts pleaded above provide a concrete observable basis for the claim. Plaintiff does not know from the consumer interface whether the communications were deleted, moved, hidden, reassociated, altered, or blocked by access-control changes. The provider-side storage state, disposition, and access mechanism are matters uniquely held by Meta and sought through the accompanying identification discovery.

56. Plaintiff was aggrieved by the interference with her stored communications and seeks the civil relief available under 18 U.S.C. § 2707, including such damages, equitable or declaratory relief, costs, and other relief as the statute permits and the evidence supports.

XII. NEED FOR EARLY IDENTIFICATION DISCOVERY

57. The identity of the responsible actor or actors cannot be reliably derived from customer-facing records

alone. Plaintiff cannot obtain a legal identity or service address from the evidence presently available to her.

58. The requested discovery is specific, phased, and limited to lawfully disclosable non-content attribution and

account-security records tied to documented events and defined time windows.

59. Phase One A seeks records from the clearest event-linked identification paths: Meta Platforms, Inc., and Microsoft/Hotmail for the two recovery addresses recorded during the October 2-3, 2024 control events. Phase One B is contingent: an AT&T subpoena may issue only if Meta first returns a concrete carrier-side identifier capable of being matched to AT&T records, and any such subpoena must be limited to that returned identifier and its associated event window. Google, Wix/Wix Payments, and other providers are preserved for later provider-specific discovery upon a further showing or further order of the Court.

60. The information is centrally necessary because Plaintiff cannot responsibly amend to name a person or

accomplish ordinary service without attribution evidence.

61. Privacy interests can be protected through non-content limits, provider/subscriber notice and objections,

restrictions on use, redaction, and further Court approval before broader correlation discovery.

XIII. REQUEST FOR RELIEF

A. Enter judgment against the responsible Defendant or Defendants on the claims proven;

B. Award compensatory damages available under 18 U.S.C. § 1030 and damages available under 18 U.S.C. § 2707, including any minimum award available under § 2707(c), and punitive damages only where the requirements of § 2707(c) are proven;

C. Award appropriate equitable or declaratory relief after identification, service, and the required showing;

D. Award recoverable costs and attorney fees where authorized by statute;

E. Grant the separately requested limited early identification discovery under Rule 26(d)(1);

F. Extend the Rule 4(m) service period as necessary to complete identification discovery, amend, and serve the

proper Defendant or Defendants;

G. Permit Plaintiff to proceed without prepayment of fees if her financial application is allowed;

H. Consider Plaintiff's separate request for volunteer counsel under 28 U.S.C. § 1915(e)(1); and

**I. Grant such other relief as the Court deems lawful and just.**

XIV. JURY DEMAND

Plaintiff demands a jury trial on every issue triable by jury under Federal Rule of Civil Procedure 38.

Date: 9/20/2026

Signature: ______________________

Theresa M. Coelho, Pro Se

31 Wood Avenue, Framingham, MA 01702

(508) 962-7047

coet590@gmail.com